UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ALVARO SANTANA-LIM | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | MISCELLANEOUS ACTION NO. 5-10-5 |
| | § | CRIMINAL ACTION NO. 5:04-2280-2 |
| UNITED STATES | § | |

## OPINION AND ORDER

Pending before the Court is Respondent's Motion to Dismiss Petitioner's Motion for Return of Seized Property. [Dkt. No. 6].[1] Because Respondent (Government) presents matters outside of the pleadings with its motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and (c), the Court will construe the Government's motion to dismiss as a motion for summary judgment. Fed. R. Civ. P. 12(d), 56. After considering the pleadings, motions, responsive filings, and applicable governing law, the Government's motion for summary judgment is hereby **GRANTED**.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

This case involves the disposition of $58,874.45 (subject funds) that was paid by petitioner Alvaro Santana-Lim (Santana) in the form of a personal check delivered to Special Agent Jesus Adrian Flores (SA Flores) as SA Flores worked in an undercover capacity for the Department of Homeland Security, Immigration and Customs Enforcement. [Dkt. Nos. 1 at 1; 6-1 at 8]. On or about September 13, 2004, Santana wrote the aforementioned check to Ten Point Logistics, a company which, unbeknownst to Santana, was a front created for the undercover criminal investigation of which Santana was a target. [Dkt. Nos. 1 at 1; 1-1 at 3; 6-1 at 4-5].

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. The abbreviation "Dkt No." or "Dkt. Nos." (plural) will be used to refer to docket entries in miscellaneous case 5:10-mc-5 and the abbreviation "Cr. Dkt. No." or "Cr. Dkt. Nos." (plural) will be used to refer to docket entries in the related criminal case 5:04-cr-2280-2.

Santana delivered the subject funds to SA Flores with the understanding that the funds were partial payment for two shipping containers of denim clothing which were being held in Ten Point Logistics' warehouse.  [Dkt. Nos. 2-1 at 9; 6-1 at 7].

On November 2, 2004, Santana was indicted for violating customs laws under 18 U.S.C. § 545.  [Cr. Dkt. No. 45].  The indictment was superseded on February 1, 2005, and on September 29, 2005, the Government moved this Court to dismiss the indictment entirely in exchange for Santana's agreement to plead guilty to the offense of misprision of a felony under 18 U.S.C. § 4.  [Cr. Dkt. Nos. 110; 113; 54].  On July 27, 2006, Santana was sentenced to one year of unsupervised probation and ordered to pay an $8,000 fine.  [Cr. Dkt. Nos. 131; 141 at 2, 4].  At the time of sentencing, Santana was a legal resident alien of the Untied States and was granted a voluntary return to Mexico, where he now resides.  [Dkt. No. 1 at 2].

On February 16, 2010, Santana petitioned this Court to order a return of the subject funds along with compensation for legal costs, as well as pre and post-judgment interest.  [*Id.*].  On August 2, 2010, the Government responded with the motion to dismiss that is the subject of this order.  [Dkt. No. 6].  Santana filed an unopposed motion for an extension of time to respond to the Government's motion, and on September 22, 2010, filed a response to the Government's motion to dismiss.  [Dkt. Nos. 7, 9].

## II.   DISCUSSION

### A.   *Construing a Motion to Dismiss as a Motion for Summary Judgment*

"Where matters outside the pleadings are considered by the district court on a motion to dismiss, Rule 12(b) [now Rule 12(d)] requires the court to treat the motion as one for summary judgment and to dispose of it as required by Rule 56."  *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1283-84 (5th Cir. 1990).  When construing a Rule 12(b)(6) or Rule 12(c) motion to

dismiss as a Rule 56 motion for summary judgment, the court must ensure that the parties have fair notice and a reasonable opportunity to respond. Fed. R. Civ. P. 12(d). The fair notice requirement can be met by constructive notice to the non-moving party. *See Riehm v. Engelking*, 538 F.3d 952, 962 n. 5 (8th Cir. 2008); *see also United States ex rel. Patton v. Shaw Services, LLC*, 2010 WL 1254615 E.D.La., 2010 *4. A non-moving party has constructive notice if the moving party's motion to dismiss explicitly seeks summary judgment in the alternative. *Riehm* at 962. Otherwise, when extrinsic evidence is introduced and at least 21 days elapse between that introduction and the court's rendering judgment, the constructive notice requirement has been met. See *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 195-96 (5th Cir. 1988) (holding that the constructive notice time frame is measured by the former Rule 56(c)(1)(B) requirement that the nonmoving party have ten days to respond; because Rule 56 no longer requires 10 days, but only references a "reasonable time to respond", the Court will measure the time to respond according to Local Rule 7.3, which requires 21 days).

Because the Government's motion to dismiss sought summary judgment in the alternative and because Santana has had more than 21 days to respond to the extrinsic evidence presented by the Government in the form of SA Flores' affidavit, the constructive notice requirement has been met. Thus, the Court will construe the Government's motion to dismiss under Rule 12(b)(6) or 12(c) as a Rule 56 motion for summary judgment.

**B.**     ***Standard for Summary Judgment***

The Federal Rules of Civil Procedure provide that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Defendant, as movant, must meet the initial burden of

"informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those facts which might affect the outcome of the suit in light of the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he burden on the moving party may be discharged by "showing" –that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  After a properly supported motion for summary judgment has been filed, the non-moving party may oppose the motion with a responsive pleading that sets out specific facts in an attempt to show that a genuine issue exists between the parties and that the case should go to trial.  Fed. R. Civ. P. 56(e)(2).

## III.   ANALYSIS

In his initial petition, Santana argues that the subject funds were never forfeited because Santana's plea agreement does not mention forfeiture and because the Court did not issue an "order of forfeiture."  [Dkt. No. 1 at 5].  Santana contends that the Government is barred from keeping the subject funds without first going through administrative or judicial forfeiture proceedings.[2]  [Dkt. Nos. 1 at 4; 9 at 19].  The Government responds that administrative or judicial forfeiture proceedings are not necessary to allow them to retain the subject funds and, furthermore, that the doctrine of *in pari delicto*[3] bars Santana from using this Court to recover the subject funds.  [Dkt. No. 6 at 5-6].  Santana counters that the doctrine of *in pari delicto*

---

[2] Although not specifically stated, it appears that Santana's reference to "forfeiture proceedings" is meant to reference administrative or judicial forfeiture proceedings.

[3] The common law doctrine of *in pari delicto*, literally translated "in equal fault," has been applied by courts to ensure "that property delivered under an illegal contract cannot be recovered back by any party [*i*]n pari delicto"; that is, the courts will not be used to enforce illegal contracts.  *United States v. Farrell*, 606 F.2d 1341, 1348 (D.C. Cir. 1979).

cannot save the Government from going through administrative or judicial forfeiture proceedings.  Specifically, Santana argues that:

> because Congress provides for the **mandatory** forfeiture of all funds traceable to illegal customs transactions, and provides the procedures by which such forfeiture shall take place, it would be error for this Court to expand the statute by applying the common law doctrine of *in pari delicto* to his case…

[Dkt. No. 9 at 14] (emphasis in original).  Santana's argument on this matter both misinterprets the relevant statute and ignores settled Fifth Circuit law dealing with government forfeitures.

Because the pleadings evidence a misunderstanding of forfeiture law, the Court will first elucidate the applicable law, 19 U.S.C. § 1595a, and will explain why the subject funds are forfeited, regardless of whether the Government initiates judicial or administrative forfeiture proceedings.  Next, the Court will apply the common law doctrine of *in pari delicto* and show why the Government does not need to return the subject funds to Santana.

A.      *19 U.S.C. § 1595a*

Santana admits that the statute that is relevant to the forfeiture of funds involved in an attempt to purchase illegally diverted merchandise is 19 U.S.C. § 1595a, and this Court agrees. [Dkt. No. 9 at 14, fn 3].  That statute provides, in relevant part:

> Merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation shall be seized and forfeited to the United States.

19 U.S.C. § 1595a(d).  Santana reads 19 U.S.C. § 1595a as revealing Congress' intent to make forfeiture proceedings the *only* way in which the government can seize and retain the funds used in an attempt to illegally export merchandise to Mexico.  Thus, Santana reasons, it would be error for a court sitting in equity to "override Congress' policy choice" by applying a common

law doctrine such as *in pari delicto* to allow the Government to keep the subject funds without forfeiture proceedings. [Dkt. No. 9 at 14]. But, as the Third Circuit pointed out in a similar case dealing with an even more explicit forfeiture statute, it is not clear that Congress, in passing a statute that authorizes forfeitures, is making a "policy choice" to supplant all common law principles in the context of forfeiture proceedings. *Mantilla v. United States*, 302 F.3d 182, 187 (3rd Cir. 2002). Just as with the statute in *Mantilla*, there is nothing in the text or legislative history of 19 U.S.C. § 1595a that could be construed as evidence that Congress intended that administrative or judicial forfeiture proceedings be the only way in which derivative contraband can be forfeited to the government. Thus, *in pari delicto* is still a viable doctrine that this Court can apply in refusing to return funds used to further an illegal transaction.

More importantly, Santana's interpretation of § 1595a(d) rests on a misunderstanding of the term "forfeited." Santana would have the Court read "shall be . . . forfeited" as requiring that the Government initiate an administrative or judicial forfeiture proceeding to obtain a judgment that title to the property has shifted to the Government. "Forfeiture", as defined by Black's, is:

> 1. The divestiture of property without compensation. 2. The loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty. Title is instantaneously transferred to another, such as the government, a corporation, or a private person. 3. Something (esp. money or property) lost or confiscated by this process; a penalty.

Black's Law Dictionary (9th Ed. 2009). While the term is often used to refer to a legal proceeding through which the Government seeks judicial confirmation that a change in title has occurred, the term itself is not so limited. In interpreting this straightforward statute in light of Supreme Court and Fifth Circuit case law, it is clear to this Court that 19 U.S.C. § 1595a(d) uses 'forfeited' to refer to the instantaneous transfer of title to the government.

In *United States v. Stowell*, the Supreme Court held that, when property is forfeited to the government because of its involvement in an illegal act, the transfer of property relates back to the illegal act, and title vests absolutely in the sovereign immediately at the time of the illegal act. 133 U.S. 1, 16-17 (1890). In the Fifth Circuit progeny of *Stowell*, the Fifth Circuit has held that this 'relation back doctrine' only applies to cases where the language of the statute makes forfeiture mandatory. *United States of America v. Currency Totaling $48,318.08*, 609 F.2d 210, 213 (5th Cir. 1980) (en banc). The Fifth Circuit has held that the language "shall be… forfeited" is characteristic of statutory provisions that prescribe as a consequence of certain crimes that the ownership of property involved immediately shifts to the Government when the crime occurs. *Currency Totaling $48,318.08* at 213. The Fifth Circuit has used the label "mandatory forfeiture" for such statutes because the changes in property interests occur regardless of whether the Government elects to bring a legal action quieting title in the property.

Section 1595a(d) of Title 19 uses the language that the Fifth Circuit has recognized as the language of a mandatory forfeiture statute; i.e. "shall be seized and forfeited to the United States".[4] Thus, at the time Santana handed the subject funds to Agent Flores in furtherance of an illegal act, the forfeiture took immediate effect and legal right to the property transferred from Santana and vested in the United States government. *Stowell* at 16-17, 19; see also *Florida Dealers & Growers Bank v. United States*, 279 F.2d 673, 677 (5th Cir. 1960). A judicial decree or administrative forfeiture would operate only to confirm the forfeiture that had already occurred and quiet title in the government as to any interested, innocent third parties. *Stowell* at 16-17.

---

[4] Incidentally, 18 U.S.C. § 545, the statute under which Santana was initially indicted, also uses the "shall be forfeited" language that indicates a mandatory forfeiture. Thus, the same analysis applies to both statutes.

Accordingly, the Court finds that the Government's failure to initiate administrative or judicial forfeiture proceedings does not, in itself, require the return of the subject funds to Santana.  The Court thus considers the doctrine of *in pari delicto*.

**B.**     ***In Pari Delicto***

The doctrine of *in pari delicto* stands for the well established principle that a court will not aid a plaintiff in recovering property delivered under an illegal contract.  *Harriman v. Northern Securities Co.*, 197 U.S. 244, 295-96 (1905).  In *United States v. Farrell*, the Court of Appeals for the District of Columbia applied the doctrine to undercover operations, finding that money paid to an undercover agent in an illegal transaction could not subsequently be recovered by the individual who willingly handed over the money in an attempt to break the law.  606 F.2d 1341, 1350 (D.C. Cir. 1979).  The *Farrell* court held:

> [I]t is contrary to public policy to permit the courts to be used by the wrongdoer… to obtain the property he voluntarily surrendered as part of his attempt to violate the law. If as the cases hold it is sound public policy to deny the use of the courts to persons In pari delicto [sic] who seek the return of illegally paid money, A fortiori [sic] it is sound public policy to deny the aid of the courts to a single violator of the law who seeks the return of money paid to a government agent in an attempt to contract for the purchase of contraband drugs.

*Id.*  This Court finds the treatment of the *Farrell* court persuasive.  Thus, if Santana was committing an illegal act by attempting to purchase the shipping containers from SA Flores, the doctrine of *in pari delicto* applies and Santana cannot look to this court to recover the subject funds of that transaction.

The Government bases its motion to dismiss on evidence establishing the illegal conduct of Santana in attempting to purchase the illegally diverted shipping containers.  [Dkt. Nos. 6 at 2; 6-1 at].  Further, the Government offers evidence that Santana knew, at the time he attempted to purchase the containers from SA Flores, that purchasing the illegally diverted shipping

containers was illegal.  [Dkt Nos. 6; 6-1 at].  In his response to the Government's motion to dismiss, Santana does not refute the Government's allegations that Santana's attempt to purchase the previously diverted merchandise was illegal, and that Santana knew at the time that it is illegal to make such a purchase.  Instead, Santana merely asserts that the subject funds were not associated with the act for which Santana was initially indicted, and implies that Santana must be convicted of attempting to purchase the illegally diverted shipping containers before the Government can seize the subject funds.  [Dkt No. 13].  This Court does not agree.

In *United States v. Thomas.*, the Fifth Circuit specifically held that a conviction is not necessary to establish that a transaction is illegal.  75 F.2d 369, 370-71 (5th Cir. 1935).  Thomas was arrested for the unlawful transportation of intoxicating liquor and the attempted bribery of customs officers.  *Thomas* at 370.  The Fifth Circuit held that, even though Thomas only pleaded guilty to the illegal transportation of liquor charge and the government chose not to prosecute him for bribery, Thomas still had no claim to the money that he had used to try to bribe the customs officers.  *Id*.  The Ninth Circuit recently extended the Fifth Circuit's reasoning in *Thomas* to undercover operations in *Kardoh v. United States*, 572 F.3d 697 (9th Cir. 2009).  In *Kardoh*, the Ninth Circuit held that the government's choice to not prosecute Kardoh for attempting to purchase forged alien registration cards "did not make his payment to the undercover agent any more innocent… nor did it deprive him of due process" for the government to keep the $40,000 that Kardoh had given to the undercover agent.  572 F.3d 697, 702 (9th Cir. 2009).  This Court finds the reasoning in *Kardoh* persuasive.  Thus, if Santana was trying to purchase redirected merchandise from SA Flores, a conviction is not necessary to establish the illegal nature of such a transaction.

In this case, the Government supported its motion to dismiss with the sworn affidavit of SA Flores.  [Dkt. No. 6-1 at 2].  In his statement, SA Flores attests to the ongoing business relationship that he had with Santana and that, during several meetings with Santana, SA Flores let Santana know that he had illegally diverted containers that had been abandoned in his warehouse and that he was willing to sell these containers to Santana.  [*Id*. at 7].  Further, SA Flores' statement attests that he told Santana the containers were illegally diverted, that it was clear that Santana was aware that he had purchased illegal merchandise, that Santana had revealed to SA Flores a plan to disguise and export the merchandise, and that "at all times, [Santana] was aware of the illegality of his business dealings with [SA Flores] in the purchase of the diverted shipments."  [*Id*. at 8, 9].

The Government's evidence establishes that Santana knowingly paid the subject funds to SA Flores in furtherance of an illegal transaction.  Because Santana has failed to raise a fact issue to refute SA Flores' declarations, the Court, applying the doctrine of *in pari delicto*, grants summary judgment in favor of the Government.

**C.       *19 U.S.C. § 208*1**

The Government contends that 19 U.S.C. § 2081 allows it to retain funds received through undercover operations without going through administrative or judicial forfeiture proceedings.  The Government bases its argument on the fact that § 2081 explicitly allows for the deposit and use of the proceeds of undercover operations and does not mention forfeiture proceedings.  Santana counters that such a reading of § 2081 is untenable and unconstitutional. Because the Court finds that, under 19 U.S.C. § 1595a, Santana forfeited the subject funds at the time he delivered them to SA Flores in an attempt to purchase illegally diverted merchandise, it

is not necessary for this Court to decide the issue of whether § 2081 is unconstitutional or whether it allows for seizing funds without a judicial or administrative forfeiture proceeding.

## IV.   CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss Petitioner's Motion for Return of Seized Property [Dkt. No. 6], which the Court has construed as a motion for summary judgment, is **GRANTED**.  Judgment shall be rendered in favor of the Government and Santana's claims dismissed with prejudice.

IT IS SO ORDERED.

DONE this 12th day of January, 2011, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE